**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROBERT MCDONOUGH,<br><br>            Plaintiff,<br><br>            v.<br><br>RAYMOND EDWIN MABUS, JR., Secretary<br>of the Navy,<br><br>            Defendant. | Civil Action No. 10-01428 (BAH)<br>Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

The plaintiff, Robert McDonough, an active duty Naval Service Lieutenant, brings this action against defendant Ray Mabus, Jr., in his official capacity as Secretary of the Navy, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (2000), alleging that the Board for Correction of Naval Records ("BCNR") abused its discretion in refusing to grant the plaintiff full credit for the commissioned service he performed in the Navy prior to entering the Navy Judge Advocate General's Corps ("Navy JAGC") in 2006. The plaintiff alleges specifically that, in being limited to 48 months of prior commissioned service credit when his rank was calculated as he entered the Navy JAGC, he was denied 41 months of active duty service for the period he served as a Lieutenant from May 1, 2003 through September 29, 2006, *see* Complaint ("Compl."), ECF No. 1, ¶ 19, and that the BCNR's interpretation of the statutory provisions, 10 U.S.C. §§ 533 and 12207, governing the calculation of his prior commissioned service credit was arbitrary and capricious. *See* Mem. in Supp. of Pl.'s Cross Mot. for Summ. J. and Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 21-2, at 1; Compl. ¶ 19. The plaintiff requests that the Court remand the agency decision so that the BCNR may "grant Plaintiff prior commissioned service credit . . . , restore Plaintiff's lineal number, date of rank,

and direct Plaintiff's record be placed before a special selection board for promotion

consideration consistent with Plaintiff's year group of 1999."  ECF No. 21-3 ("Pl's. Proposed

Order").[1]

Pending before the Court are cross-motions for summary judgment.  *See* ECF Nos. 18,

21.  For the reasons explained below, the plaintiff's motion for summary judgment is DENIED

and the defendant's motion for summary judgment is GRANTED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      FACTUAL ALLEGATIONS

#### 1.      The Plaintiff's Enlistment in the United States Navy

On January 22, 1999, the plaintiff entered the United States Naval Service Officer

Candidates School ("OCS") for training to become a commissioned officer of the United States

Navy.[2]  Pl.'s Statement of Facts ("Pl.'s Facts"), ECF No. 21-1, ¶ 1; Def.'s Statement of Facts

("Def.'s Facts"), ECF No. 18, ¶ 1; Compl. ¶ 5.

The plaintiff completed OCS, and, on April 23, 1999, he was commissioned as an Ensign

(O-1) in the United States Navy Reserve-active ("USNR-active").  Compl. ¶ 6; Def.'s Mem. in

Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 2.  Two years later, on April 23, 2001, the

plaintiff was promoted to Lieutenant Junior Grade (O-2).  Compl. ¶ 7; Def.'s Facts ¶ 3; Pl.'s

Facts ¶ 3.  On May 1, 2003, the plaintiff was promoted to Lieutenant, at which point he was

---

[1] The Plaintiff's Complaint notes that "[a]lternately" it requests that "this Honorable Court declare that 10 U.S.C. § 533 is applicable to Plaintiff and order Plaintiff's original lineal number and date of rank be restored and further order Plaintiff's record to be placed before a special selection board for consideration for selection to Lieutenant Commander in such years with Plaintiff's year group of 1999 as Plaintiff would have been so considered if Plaintiff had retained Plaintiff's original lineal number and date of rank."  Compl. at 7-8.

[2] The plaintiff was thus a member of "year group 1999."  Compl. ¶ 5.  According to the plaintiff, a servicemember's year group determines when he is afforded "[p]romotion opportunities," and "[n]ormally individuals in a year group are considered for promotion at the same time."  *Id.* ¶ 5.

assigned lineal number 09531800 and a date of rank of May 1, 2003.[3]  Compl. ¶ 8; Pl.'s Facts ¶¶ 4-5; Def.'s Facts ¶¶ 4-5.

In August 2003, the plaintiff, while still on active duty in the Navy, began a night school program at Roger Williams Law School in Rhode Island while continuing his naval service during the day.  Compl. ¶ 9; Pl.'s Facts ¶¶ 6-7; Def.'s Facts ¶¶ 6-7.

On December 31, 2005, before he graduated from law school, the plaintiff was released from active duty "while retaining an obligation in the Individual Ready Reserve ("IRR") until January 22, 2007."  Def.'s Facts ¶ 8; Pl.'s Facts ¶ 8; Compl. ¶ 10.  The IRR is a component of reserve forces where reservists do not participate in the daily drills and activities of their service branch but are eligible for mobilization on command of the Secretary of the Navy.  *See* 10 U.S.C. § 10144.  The plaintiff was approved to become an active reservist on January 30, 2006, *see* Pl.'s Facts ¶ 9; Def.'s Facts ¶ 9.

### 2.   The Plaintiff's Appointment to the Navy Judge Advocate General's Corps

In May 2006, while still retaining a reserve obligation in the IRR, the plaintiff graduated from law school.  Compl. ¶ 12; Def.'s Facts ¶¶ 6-7.  On August 25, 2006, the plaintiff was recommissioned as a reserve Ensign in the Navy JAGC student program pursuant to 10 U.S.C. § 12203.[4]  Compl. ¶ 14; Pl.'s Facts ¶ 10; Def.'s Facts ¶ 10; AR Appx. 3.[5]  On September 29, 2006, the plaintiff passed the bar exam, satisfying the final "professional qualification" required for an active-duty appointment in the Navy JAGC.  Compl. ¶¶ 16-17; Pl.'s Facts ¶ 11; Def.'s Facts ¶

---

[3] "[D]ate of rank involves seniority among officers of the same rank, [while] lineal numbers provide for relative seniority within the entire Navy."  Def.'s Facts nn.3-4.

[4] The parties agree that the plaintiff's appointment was made under 10 U.S.C. § 12203.  *See* Pl.'s Facts ¶ 10; Def.'s Facts ¶ 10.  There is no dispute related to this statutory provision.

[5] The "AR Appx." is the appendix to the Administrative Record ("AR"), which was filed after this case was remanded to the BCNR.

11.  On that date, the plaintiff received an active-duty appointment to Lieutenant in the Navy

JAGC, the same rank he previously held upon his release from active duty.  Compl. ¶ 16; Pl.'s

Facts ¶ 12; Def.'s Facts ¶ 12.

Concurrently with his new appointment, the plaintiff's lineal number was modified from

09531800 to 13538600, and his date of rank as Lieutenant was modified from May 1, 2003 to

September 29, 2006.  Compl. ¶ 18, Pl.'s Facts ¶ 13; Def.'s Facts ¶ 13.

### B.     STATUTORY FRAMEWORK

At issue in this lawsuit is the calculation of the plaintiff's rank when he entered the Navy

JAGC in 2006.  *See* Compl. ¶¶ 18, 19.  The defendant contends in its Motion for Summary

Judgment that the plaintiff's date of rank was calculated correctly pursuant to 10 U.S.C. § 533,

Department of Defense Directive 1312.3 ("DoD Directive 1312.3" or "DODDIR 1312.3"), and

Chief of Naval Operations Instruction 1120.11 ("Naval Operations Instruction 1120.11" or

"OPNAVINST 1120.11").  *See* Def.'s Facts ¶ 14; AR Appx. at 3 (BCNR decision explaining

how the plaintiff's entry grade credit was calculated).  The plaintiff argues, to the contrary, that

the "[d]efendant miscalculated Plaintiff's date of rank based on a 48 month limit on prior

commissioned service credit contained in Naval Operations Instruction 1120.11, without regard

to the prior commissioned service credit savings provisions contained in 10 U.S.C. [§] 533(a)(1)

and 10 U.S.C. [§] 12207(a)(1)."  Pl.'s Mem. at 3.  As noted, the plaintiff argues that this alleged

miscalculation "had the effect of not recognizing . . . a period of 41 months[] for promotion

purposes," in alleged violation of "the statutory guidance of 10 U.S.C. [§] 533(a)(1), (2), and [§]

533(f)."  Compl. ¶¶ 19-20, 24.  A review of the relevant statutory and regulatory provisions

provides the necessary background for resolving this dispute.

### 1.      Statutory Provisions at Issue

At the outset, the Court must address a point of confusion in the challenged BCNR decision of April 1, 2011 and the parties' briefing, namely whether **10 U.S.C. § 533** or **10 U.S.C. § 12207** is the statute under which the plaintiff's prior commissioned service credit was calculated upon his appointment in 2006 as a Lieutenant in the Navy JAGC.[6]  These two statutes, in relevant part, are substantively nearly identical, with the distinction being that 10 U.S.C. § 533 applies to "service credit upon original appointment as a commissioned officer" and 10 U.S.C. § 12207 applies to service credit "of a person receiving an original appointment as a reserve commissioned officer."[7]  Furthermore, both of these statutes are implemented by the regulations at issue in this case, namely DoD Directive 1312.3 and Naval Operations Instruction 1120.11.

The BCNR, in its final decision of April 1, 2011 stated that the plaintiff's "Regular appointment in the [JAGC] was computed in accordance with [10 U.S.C. § 533]."  AR Appx. at 3.  Before making that decision, the BCNR had requested a legal opinion from the Department of Navy's Navy Personnel Command ("NPC") regarding the plaintiff's request for a correction of his naval record to provide him the 41 months of prior service credit he believed he was owed.  AR Appx. at 2.  The NPC stated in its advisory opinion for the BCNR that "Applicant's grade and rank within grade at the time of his appointment into the JAGC Student Program was done pursuant to 10 U.S.C. § 12207 (Service Credit Upon Original Appointment [As a Reserve

---

[6] There is also a separate and distinct disagreement about whether the plaintiff's appointment fell under 10 U.S.C. § 533(f).  That issue will be discussed later.

[7] Although the plaintiff purports to quote the statutory language of 10 U.S.C. § 533(a), *see* Pl.'s Mem. at 10, the plaintiff incorrectly cites the statute.  The plaintiff appears to have quoted the statutory language from 10 U.S.C. § 12207(a) and merely replaced the phrase "reserve commissioned officer" with "regular commissioned officer" so that these statutes appeared nearly identical.  The language of the two statutory provisions is not *identical* but substantively they have the same meaning that the plaintiff attributed to them.  10 U.S.C. § 533(a) applies to "a person receiving an original appointment in a commissioned grade," whereas 10 U.S.C. § 12207(a) applies to "a person receiving an original appointment as a reserve commissioned officer."  Another distinction is that Section 533 governs credit for "any active commissioned service" whereas Section 12207 governs credit for "any commissioned service."

Commissioned Officer]) and not 10 U.S.C. § 533, which applies to Regular appointments."  AR

Appx. at 6.  The BCNR "substantially concurred with the comments contained in the advisory

opinion, except to note that entry grade credit (EGC) for [the plaintiff's] Regular appointment in

the [JAGC] was computed in accordance with title 10 of the United States Code, section 533, not

section 12207."  AR Appx. at 3.  The BCNR decision offers no further clarification or reason for

its exception to the NPC legal opinion.

Consistent with the BCNR decision, the defendant's Motion for Summary Judgment and

Statement of Facts refer to 10 U.S.C. § 533.  *See* Def.'s Mem. at 1 ("Plaintiff's date of rank

calculation . . . must be calculated in accordance with section 533 . . ."); *id*. at 4 ("Defendant

calculated Plaintiff's date of rank based on 10 U.S.C. section 533 . . ."); *see id*. at 10-11

(excerpting 10 U.S.C. § 533 as the only statute discussed at length under a heading entitled

"Applicable Federal Statutes and Navy Regulations"); Def.'s Facts ¶ 14 ("Defendant calculated

Plaintiff's date of rank pursuant to the calculations set forth in 10 U.S.C. § 533, DoD Directive

1312.3, and Naval Operations Instruction 1120.11"); *id*. ¶ 16 ("Defendant calculated Plaintiff's

date of rank based on 10 U.S.C. section 533 . . .").  The Defendant's Opposition to Plaintiff's

Cross-Motion for Summary Judgment and Reply Brief in Support of Defendant's Motion for

Summary Judgment ("Def.'s Reply"), however, states that 10 U.S.C. § 12207(a) is "the statute

upon which Plaintiff's prior service credit was actually calculated."  Def.'s Reply, ECF No. 24,

at 3 (excerpting both 10 U.S.C. § 533(a)(2) and 10 U.S.C. § 12207(a)(2)).  Nowhere does the

defendant address this apparent change in its view of the correct statutory basis for calculation of

the plaintiff's prior service credit.

The plaintiff's filings do not clarify this matter.  The plaintiff's Complaint, filed before

the final BCNR decision at issue (the final BCNR decision was made on remand from this

Court), states that 10 U.S.C. § 533 applies to the calculation of the plaintiff's date of rank, and does not even mention 10 U.S.C. § 12207. *See* Compl. ¶¶ 24, 34-35. The Plaintiff's Cross-Motion for Summary Judgment, however, states that "the calculation of Plaintiff's date of rank is governed unambiguously by 10 U.S.C. § 533 and 10 U.S.C. § 12207." Pl.'s Mem. at 1; *see also id.* at 3, 5, 8, 15; *see also* Pl.'s Facts ¶ 30 ("Plaintiff now asks that this Court declare that BCNR's failure to grant relief in Plaintiff's case was arbitrary, capricious, an abuse of discretion and not in accordance with law by failing to apply 10 U.S.C. [§] 533 and 10 U.S.C. [§] 12207."); *see id.* ("Plaintiff seeks an order remanding his case to BCNR with instructions consistent with the provisions contained in 10 U.S.C. [§] 533 and 10 U.S.C. [§] 12207 . . . ."). Since this Court's reasoning applies regardless of whether the plaintiff's commissioned service credit was computed under 10 U.S.C. § 533 or 10 U.S.C. § 12207, the Court need not decide which of these two statutes applied. Since the Complaint, the final BCNR decision, and the Defendant's Motion for Summary Judgment all refer to "10 U.S.C. § 533," the Court will primarily refer to the statute at issue in this case as 10 U.S.C. § 533, with points of clarification as needed with respect to 10 U.S.C. § 12207.

## 2.    10 U.S.C. § 533

Section 533 of Title 10 of the United States Code governs the calculation of service credit for a "person receiving an original appointment in a commissioned grade" in the United States Navy. According to 10 U.S.C. § 533(a)(2), "[t]he Secretary of Defense shall prescribe regulations, which shall apply uniformly among the Army, Navy, Air Force, and Marine Corps, to authorize the Secretary of the military department concerned to limit the amount of prior active commissioned service with which a person receiving an original appointment may be

credited under paragraph (1), or to deny any such credit, in the case of a person who at the time of such appointment is credited with constructive service under subsection (b)." *Id.* § 533(a)(2).[8]

Pursuant to this statute – as well as 10 U.S.C. § 12207 – the Secretary of Defense has promulgated DoD Directive 1312.3, *see* AR 108-115, and Naval Operations Instruction 1120.11, *see* AR 116-133. The defendant contends – and the BCNR has held – that these regulations, consistent with the statutory authority in 10 U.S.C. § 533(a)(2), govern the plaintiff's date of rank calculation.[9]

### 3.     Department of Defense Directive 1312.3[10]

Department of Defense Directive 1312.3, *see* AR 108, implements 10 U.S.C. § 533 as well as 10 U.S.C. § 12207. According to DoD Directive 1312.3, "[i]t is the policy of the

---

[8] Likewise, 10 U.S.C. § 12207(a)(2) provides: "[t]he Secretary of Defense shall prescribe regulations, which shall apply uniformly among the Army, Navy, Air Force, and Marine Corps, to authorize the Secretary of the military department concerned to limit the period of prior commissioned service with which a person receiving an original appointment may be credited under paragraph (1), or to deny any such credit, in the case of a person who at the time of such appointment is credited with constructive service under subsection (b)." This is identical to 10 U.S.C. § 533(a)(2) except that it refers to "prior commissioned service" rather than "prior active commissioned service." This is not a distinction made by either of the parties, and does not effect this Court's analysis in any way.

[9] The plaintiff also contends that he was appointed as a JAGC Lieutenant under 10 U.S.C. § 533(f). *See* Pl.'s Mem. at 13. This provision provides, in pertinent part, that "A reserve officer (other than a warrant officer) who receives an original appointment as an officer (other than as a warrant officer) in the . . . Regular Navy . . . shall – (1) in the case of an officer on the active-duty list immediately before that appointment as a regular officer, be appointed in the same grade and with the same date of rank as the grade and date of rank held by the officer on the active-duty list immediately before the appointment; and (2) in the case of an officer not on the active-duty list immediately before that appointment as a regular officer, be appointed in the same grade and with the same date of rank as the grade and date of rank which the officer would have held had the officer been serving on the active-duty list on the date of the appointment as a regular officer." The BCNR held, however, that the plaintiff was *not* appointed to the JAGC under 10 U.S.C. § 533(f). *See* AR Appx. at 3. The NPC advisory opinion seemed to suggest that 10 U.S.C. § 533(f) may have applied in this case, *see* AR Appx. at 8, but the BCNR specifically found that "section 533(f) applies to officers who are merely transitioning from Reserve to Regular status, but the EGC [or entry grade credit] provisions of section 533 apply to officers, like yourself, who are entering a new professional field." *Id.* at 3; *see also* Def.'s Mem. at 14-15. In other words, the plaintiff's 2006 appointment as a Lieutenant in the Navy JAGC was not an "appointment as a regular officer" under § 533(f) but a "Regular appointment in the Judge Advocate General Corps (JAGC)" governed by the EGC provisions of section 533. AR Appx. at 3. Furthermore, as discussed *infra*, even if the plaintiff's appointment had been under 10 U.S.C. § 533(f), that would not entitle him to credit for all of his prior commissioned service.

[10] The defendant notes that this regulation has since been updated by DoD Directive 1312.03. Since DoD Directive 1312.3 was in place when the plaintiff's rank was calculated, however, it applies here. *See* Def.'s Mem at 11 n.11. The plaintiff does not contend that any changes made to this regulation have any bearing on the instant dispute. *See* DODDIR 1312.03 (as updated September 15, 2011), available at Department of Defense Website for DoD Issuances, http://www.dtic.mil/whs/directives/corres/pdf/131203p.pdf (last accessed Nov. 26, 2012).

Department of Defense that the award of service credit to any person being appointed, assigned, or designated as a commissioned officer in an officer category shall be equitably determined to establish an appropriate appointment grade and date of rank relative to other officers in the same competitive category."  DoD Directive 1312.3 ¶ 4.1.  It further notes that "[t]he entry grade credit that is awarded shall be the sum of the prior commissioned service allowed and the amount of constructive service credit allowed."  *Id*. ¶ 4.2.

### 4.    Chief of Naval Operations Instruction 1120.11

Naval Operations Instruction 1120.11 establishes Navy-specific regulations governing the awarding of entry grade credit under 10 U.S.C. § 533 and 10 U.S.C. § 12207, providing guidance for the "appointment of regular and reserve officers in the Navy Judge Advocate General's Corps."  AR 116.  Naval Operations Instruction 1120.11 provides that individuals entering JAGC may receive three years of entry grade credit for law school.  *Id*. at 123.  It also provides that the total entry grade credit ("EGC") "shall be limited to 48 months."  *Id*. at 124 ("To obtain experienced former active-duty commissioned officers who can compete for career status while maintaining uniform and stable management of the JAG Corps community, total EGC granted, other than for officers accessed through the [Law Education Program, or LEP], shall be limited to 48 months").[11]

### C.    PROCEDURAL HISTORY

The plaintiff alleges that, since "[a] service member's date of rank directly affects the date on which that service member may be eligible for promotion," Def.'s Facts ¶ 15, following the calculation of his rank after entering the JAGC in 2006, he immediately entered into

---

[11] As the defendant indicates, Naval Operations Instruction 1120.11 provides other calculations for officers who are becoming JACGs through the LEP program and for "unusual cases involving special experience or unique qualifications."  Def.'s Mem. at 13; *see also* AR 117-124.  The plaintiff did not enter the JACG program through the LEP program nor does the plaintiff suggest that his is an "[u]nusual case[] involving special experience or unique qualifications."  AR 124.

"negotiations with Navy Personnel Command" in order to correct what he alleges was the erroneous deprivation of 41 months of prior service time.  Compl. ¶ 20.  On November 14, 2007, Navy Personnel Command ("NPC") denied relief, finding that the plaintiff's rank had been properly calculated.  *Id.* ¶ 21; Pl.'s Facts ¶ 19; Def.'s Facts ¶ 19.

The plaintiff then attempted to seek relief by appealing to the BCNR.  Compl. ¶ 22.  The plaintiff sought from the BCNR, *inter alia*, restoration of his original date of rank and lineal number, and consideration for promotion along with his year group.  *Id.* ¶ 23; Pl.'s Facts ¶ 20; Def.'s Facts ¶ 20.  The BCNR denied the plaintiff's appeal on August 8, 2008, ruling that the plaintiff's date of rank and lineal number had been properly calculated.  Pl.'s Facts ¶ 21; Def.'s Facts ¶ 21; AR 29-31.

The plaintiff requested that the BCNR reconsider its decision, clarifying that he was not seeking constructive credit for time spent in law school.  Compl ¶ 32; Pl.'s Facts ¶ 22; Def.'s Facts ¶ 22.  On June 17, 2009, the BCNR again denied the plaintiff relief on the grounds that "[the p]laintiff failed to provide any 'new or material information' for the BCNR to consider." Def.'s Facts ¶ 23; *see also* Compl. ¶ 33; Pl.'s Facts ¶ 23.

The plaintiff then filed this lawsuit, on August 23, 2010, in the District Court for the District of Columbia.  *See* ECF No. 1.  In November 2010, upon a joint request from the parties, the Court remanded the case back to the BCNR for further review.  *See* Minute Order (Nov. 5, 2010); Pl.'s Mem. at 5; Def.'s Facts ¶ 25; AR Appx. 77-79.

The BCNR then sought an advisory opinion from the NPC, *see* AR Appx. at 5, which the NPC provided to the BCNR on January 26, 2011.  Pl.'s Facts ¶ 28; Def.'s Facts ¶ 28; AR Appx. 5-20.  The NPC concluded that the plaintiff's entry grade credit and date of rank were computed

upon his entry into the JAGC Student Program in accordance with 10 U.S.C. § 12207.[12]   The

NPC advisory opinion explained that under 10 U.S.C. § 12207(a), "a person commissioned

under section 12203 'shall' be credited with any prior commissioned service," AR Appx. at 6,

but "subsection 12207(a)(2) grants the Secretary of the Defense (SECDEF) authority to permit

the Service Secretaries authority to limit the amount of prior commissioned service credit an

officer may receive under subsection 12207(a)(1)," *id.*

 The NPC advisory opinion stated that the Secretary of Defense implements section 12207

through Department of Defense Directive 1312.3, pursuant to which "entry grade credit that is

awarded shall be the sum of the prior commissioned service allowed and the amount of

constructive service credit allowed." *Id.*  According to the NPC advisory opinion, the plaintiff

was not entitled to any constructive service credit because he was in active status while in law

school, but the Secretary of the Navy was "authorized to award" the plaintiff EGC for his

previous commissioned service. *Id.* at 7.

 The NPC advisory opinion further explained that "[c]onsistent with DODDIR 1312.3,

Chief of Naval Operations Instruction (OPNAVINST) 1120.11 regulates the standards for

Appointment of Regular and Reserve officers in the Navy JAGC." *Id.*  Pursuant to paragraph 12

of that regulation, EGC for JAGC officers, barring exceptions not applicable here, is capped at

48 months. *See id.*   It was based on this regulation, consistent with the statutory authority under

title 10, and consistent with DODDIR 1312.3, that the plaintiff's entry grade credit was capped at

48 months.[13]

---

[12] As explained *supra*, the BCNR would later clarify that the plaintiff's entry grade credit and date of rank were computed under "10 U.S.C. § 533," and not "10 U.S.C. § 12207."  This discrepancy, however, does not change the NPC's reasoning, on which the BCNR relied.  *See* AR Appx. 2-3.

[13] "Arguably," the NPC advisory opinion states, the plaintiff "was granted too *much* [entry grade credit]," as he was not entitled to constructive service credit for the time he was in law school and his prior service award should have been 36 months under DODDIR 1312.3.  AR App. at 7-8.

On April 11, 2011, a three-member panel of the BCNR, relying in large part on the

reasoning in the NPC advisory opinion, declined to grant the plaintiff relief.  AR Appx. at 2-4.

The BCNR first clarified in its decision that, contrary to what the NPC advisory opinion stated,

the plaintiff's entry grade credit when he entered the JAGC was "computed in accordance with

[10 U.S.C. § ]533, not section 12207."  AR Appx. at 3.  Beyond that exception, the BCNR

"substantially relied upon the NPC advisory opinion[,] stating that [the p]laintiff's date of rank

had been properly calculated in accordance with 10 U.S.C. § 533, DoD Directive 1312.3, and

Naval Operations Instruction 1120.11."  Pl.'s Facts ¶ 29; Def.'s Facts ¶ 29; *see also* Pl.'s Mem.

at 5; AR Appx. 1-4.

Specifically, the BCNR found that 10 U.S.C. § 533(a)(2) authorizes the Secretary of

Defense "to prescribe regulations limiting credit for prior active commissioned service, or to

deny any such credit in the case of a person credited with constructive service."  AR Appx. 3-4.

The BCNR also found that "applicability of the authority to limit credit for prior active

commissioned service is not restricted to persons credited with constructive service."  *Id.* at 4.

The BCNR further explained that DoD Directive 1312.3 and Naval Operations Instruction

1120.11 implement sections 533 and 12207.  *See id.* at 3.

Responding to the plaintiff's argument that his appointment fell under 10 U.S.C. § 533(f),

the BCNR stated that 10 U.S.C. § 533(f) "applies to officers who are merely transitioning from

Reserve to Regular status, but the EGC provisions of section 533 apply to officers, like yourself,

who are entering a new professional field."  *Id.*  The BCNR also clarified that the original letter

denying the plaintiff's requests for relief (from August 8, 2008) "should have stated that

[paragraph 2.2] of DODDIR 1312.3, which states that the directive does not apply to

appointments under section 533(f), is not applicable, as [the plaintiff's] appointment to the JAGC

12

was not under section 533(f), but that the EGC [entry grade credit] pr[o]visions of the directive <u>are</u> applicable." *Id.* (emphasis in original).

Following the BCNR's decision, the defendant filed a Motion for Summary Judgment in this Court. *See* ECF No. 18. The plaintiff filed a Cross-Motion for Summary Judgment. *See* ECF No. 21. The stay was then lifted, and these two motions are pending before this Court.

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In this case, the Court is presented with cross motions for summary judgment in the context of reviewing a decision of the BCNR, an agency action. "[W]hen an agency action is challenged[] . . . [t]he entire case on review is a question of law, and only a question of law." *Marshall Cnty. Healthcare Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). This Court need not and ought not engage in lengthy fact finding, since "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quotation marks and citation omitted); *see also Wilson v. McHugh*, 842 F. Supp. 2d 310, 315 (D.D.C. 2012); *Caez v. United States*, 815 F. Supp. 2d 184, 188 (D.D.C. 2011). Both parties agree that there is no dispute as to any material fact. Pl.'s Mem. at 6 ("Plaintiff agrees with Defendant that Summary Judgment upon the administrative record is the appropriate court sanctioned methodology for resolving this matter."); Def.'s Mem. at 6-7.

**B.**    **"Arbitrary and Capricious" under the Administrative Procedure Act**

Pursuant to 10 U.S.C. § 1552(a), "[t]he Secretary of a military department [acting through a civilian board, such as, in this case, the BCNR] may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  A final decision from the BCNR "is subject to judicial review under § 706 of the Administrative Procedure Act, 5 U.S.C. § 706."  *Pettiford v. Sec'y of the Navy*, 774 F. Supp. 2d 173, 181 (D.D.C. 2011) (citing *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)).

Under the APA, a court defers to the agency unless the agency's action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Pettiford*, 774 F. Supp. 2d at 181.  To evaluate whether an agency action is "arbitrary or capricious," the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (quotation marks and citation omitted); *see also Epstein v. Geren*, 539 F. Supp. 2d 267, 274 (D.D.C. 2008).  As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983).

Indeed, under the "arbitrary and capricious" standard of review, a court presumes that the agency's action is valid.  *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981); *see also Grid Radio v. FCC*, 278 F.3d 1314, 1322 (D.C. Cir. 2002); *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *CS-360, LLC v. U.S. Dep't of Veteran Affairs*, 846 F. Supp. 2d 171, 185 (D.D.C. 2012).  Nevertheless, if the agency "failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action."  *Cnty. of L.A.*

*v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999).  At a minimum, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)); *Kight v. United States*, 850 F. Supp. 2d 165, 169 (D.D.C. 2012); *Rudo v. Geren*, 818 F. Supp. 2d 17, 24 (D.D.C. 2011) ("As long as an agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made, courts will not disturb the agency's action.") (internal quotation marks and citation omitted).  "A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  *Frizelle*, 111 F.3d at 176 (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)).

### C.     Deference Due to Military Corrections Boards

In the D.C. Circuit, review of the actions of military corrections boards is "unusually deferential."  *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (citing *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); *see also Appleby v. Geren*, 330 Fed. App'x 196, 198 (D.C. Cir. 2009) (unpublished).  "Even in the face of an 'undisputed error' or 'conceded injustice,' we must deny the petition for review if the Board offered an adequate explanation 'that a court can measure.'"  *Id.* (quoting *Kreis*, 866 F.2d at 1514).

Nevertheless, there is a limit to the deference that this Court owes to agency action, even with respect to military matters.  "[T]he law in this Circuit . . . differentiates between 'military judgment requiring military expertise,' which should be reviewed under the 'unusually deferential' standard, and 'review of the Board's application of a procedural regulation governing its case adjudication process,' which is reviewed under the traditional arbitrary and

capricious APA standard." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (citing

*Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005)).  The plaintiff asserts that in this

case no heightened deference is due because the BCNR's decision "required no specialized

military judgment."  Pl.'s Mem. at 8.  This Circuit, however, has taken a broad view of military

expertise to which deference is owed, extending it to the military records correction boards'

personnel decisions.  *See Cone*, 223 F.3d at 793 (applying heightened deference in a case

involving Army Board for Correction of Military Records' refusal to force quantitative personnel

ratings to conform to a bell curve).  Much like military tactics, the unique military ranking and

staffing system operates largely outside of the judiciary's expertise.  *See id.* ("This deferential

standard is calculated to ensure that the courts do not become a forum for appeals by every

soldier dissatisfied with his or her ratings, a result that would destabilize military command and

take the judiciary far afield of its area of competence.").  Thus, the Court will apply "substantial

deference" to the BCNR's decision here.  *See, e.g.*, *Miller v. Dep't of Navy*, 476 F.3d 936, 938-39

(D.C. Cir. 2007) (applying "unusually deferential" standard in military promotion case).

## III.   DISCUSSION

The plaintiff argues that the BCNR's decision to limit the plaintiff's prior service credit

to 48 months was incorrect, and caused the plaintiff to "lose promotion opportunities."  Pl.'s

Mem. at 1.  Specifically, the plaintiff alleges that the calculation of the plaintiff's date of rank "is

governed unambiguously by 10 U.S.C. § 533 and 10 U.S.C. § 12207," and that the

"interpretation of the statutes by BCNR denying [the p]laintiff relief was arbitrary and

capricious, an abuse of discretion and contrary to law."  *Id.*  The defendant counters that the date

of rank calculation "does not fall squarely within the confines of 10 U.S.C. § 533" and that it

must be "calculated in accordance with section 533, DoD Directive 1312.3, and Naval

Operations Instruction 1120.11." Def.'s Mem. at 1.  The defendant notes that taken together, this statute and these regulations provide "more detailed instructions on how the Department should calculate prior military service, with respect to promotion and other opportunities, for a service member who is beginning a new professional career within the Navy JAGC program." *Id.* at 1-2.  The Court concludes that the statutory provision at issue—10 U.S.C. § 533—plainly gives the Secretary of Defense the authority to issue regulations limiting the amount of prior service credit granted to new JAGC lawyers (as noted, *supra*, this same reasoning applies to 10 U.S.C. § 12207).  Since DoD Directive 1312.3 and Naval Operations Instruction 1120.11, pursuant to which the plaintiff's entry grade credit was calculated, are consistent with that statutory authority, the plaintiff has not shown that the BCNR's final decision was "arbitrary and capricious."

The Court first examines 10 U.S.C. § 533, and then the regulations issued by the Department of Defense related to the plaintiff's date of rank calculation, before turning to the plaintiff's remaining arguments that the BCNR decision was arbitrary and capricious.

## A.      10 U.S.C. § 533 Is Not Ambiguous.[14]

The plaintiff argues that the "calculation of Plaintiff's date of rank is governed unambiguously by 10 U.S.C. § 533." Pl.'s Mem. at 1.  Specifically, the plaintiff argues that, pursuant to 10 U.S.C. § 533(a),[15] Congress clearly intended that full prior service credit "shall"

---

[14] The analysis in this section also applies to the analogous provisions in 10 U.S.C. § 12207.

[15] 10 U.S.C. § 533(a)(1) provides: "For the purpose of determining the grade and the rank within grade of a person receiving an original appointment in a commissioned grade (other than a warrant officer grade) in the Regular Army, Regular Navy, Regular Air Force, or Regular Marine Corps, such person shall be credited at the time of such appointment with any active commissioned service (other than service as a commissioned warrant officer) that he performed in any armed force, the National Oceanic and Atmospheric Administration, or the Public Health Service before such appointment."  10 U.S.C. § 12207, however, as noted, applies to "an original appointment as a *reserve* commissioned officer" rather than "an original appointment in a commissioned grade."  10 U.S.C. § 12207(a)(1) (emphasis added).

be granted to a person receiving an original appointment as a regular commissioned officer.  Pl.'s Mem. at 10.

The very next prong of the statute, however, gives the Secretary of Defense authority to issue regulations related to the granting of prior commissioned service credit.  Specifically, 10 U.S.C. § 533(a)(2) provides:

> The Secretary of Defense shall prescribe regulations, which shall apply uniformly among the Army, Navy, Air Force, and Marine Corps, to authorize the Secretary of the military department concerned to limit the amount of prior active commissioned service with which a person receiving an original appointment may be credited under paragraph (1), or to deny any such credit, in the case of a person who at the time of such appointment is credited with constructive service under subsection (b).

This statute is unambiguous and plainly states that the Secretary of Defense "shall prescribe regulations" concerning the amount of prior commissioned service credit a person receiving an original appointment may be credited.  The plaintiff argues unavailingly that section 533(a)(2) "taken in conjunction with section 533(a)(1) means that a service member gets full credit for prior commissioned service unless that service member got constructive service credit in which case the Secretary can limit or deny prior commissioned service credit."  Pl.'s Mem. at 11.  In other words, the plaintiff reads the conditional clause, "in the case of a person who at the time of such appointment is credited with constructive service" as a restriction on the Secretary's authority both "to limit the amount of prior commissioned service [that] may be credited" and "to deny any such credit" altogether.  The plaintiff explains that "[h]owever, if there is no constructive service credit section, 533(a)(1) applies and all prior service is credited."  Pl.'s Mem. at 11.  That is not a correct reading of the statute.

The plain language of the statutory provision authorizes the Secretary of Defense to promulgate regulations to "limit the amount of prior active commissioned service with which a

person receiving an original appointment may be credited." 10 U.S.C. § 533(a)(2). Thus, the

Secretary of Defense may promulgate regulations that "limit the amount of prior active

commissioned service" regardless of whether constructive service is credited. The clause "in the

case of a person who at the time of such appointment is credited with constructive service under

subsection (b)" modifies only the language "or to deny such credit."

The plaintiff further argues that there is "no rational basis" for concluding that the

constructive credit clause only modifies the denial provision because that would mean the

Secretary of Defense "could only deny credit to constructive service members, but could not

limit credit to constructive credit service members." Pl.'s Mem. at 12. In other words, the

plaintiff contends that the conditional clause relating to constructive service members either

applies very broadly (restricting the Secretary's authority both to limit or to deny credit), or very

narrowly (restricting the Secretary's authority to only grant or deny constructive credit, rather

than also having the authority to limit it). The Court does not agree with this strained reading of

the provision. The defendant has offered a rational basis for the statutory distinction for

treatment of constructive credit, as opposed to commissioned service credit. Constructive credit

is not for time served in the military, but for other time, such as time in school, and the Secretary

may credit that time as the needs of the military require, in full or not at all, or somewhere in

between. As the defendant argues, "[i]t makes sense that the Secretary could completely deny

constructive service credit, since he alone provides it through the delegation by Congress in 10

U.S.C. § 12207(b)," Def.'s Reply at 3 n.2, which sets out examples of how a Secretary of the

military department, "[u]nder regulations prescribed by the Secretary of Defense," shall credit

persons receiving an original appointment as a reserve commissioned officer with constructive

service, *see* 10 U.S.C. § 12207(b).

Accordingly, the Court agrees with the defendant – and with the BCNR final decision – that "title 10 of the United States Code, section 533(a)(2) authorizes [the Secretary of Defense] to prescribe regulations limiting credit for prior active commissioned service, or to deny any such credit in the case of a person credited with constructive service." AR Appx. at 3-4. Given the plain language of the statute, the Court further agrees with BCNR that the "applicability of the authority to limit credit for prior active commissioned service is not restricted to persons credited with constructive service[.]" *Id.* at 4.

**B.**      **The Department of Defense Promulgated Regulations Pursuant to its Authority Under 10 U.S.C. § 533(a)(2) and 10 U.S.C. § 12207(a)(2).**

Pursuant to the directive in 10 U.S.C. § 533(a)(2) and 10 U.S.C. § 12207(a)(2) that the Secretary of Defense "shall prescribe regulations," the Department of Defense promulgated DoD Directive 1312.3 and the Secretary of the Navy developed Naval Operations Instructions 1120.11 to limit the amount of prior service credit due a service member entering a new professional field. The plaintiff does not dispute that, if these regulations were to apply to his situation, his date-of-rank was calculated correctly in this case. Instead, the plaintiff argues that these regulations are "facially defective" and that they simply do not apply because the plaintiff did not have any constructive service credit, and thus the defendant had no statutory authority to promulgate these regulations to limit his service credit. Pls.'s Mem. at 12. The Court disagrees. These regulations are consistent with the unambiguous statutory authority under title 10, and the Court finds nothing arbitrary and capricious about the BCNR's explanation of how the plaintiff's date of rank was calculated pursuant to these regulations.

**1.**      **Department of Defense Directive 1312.3**

Pursuant to its authority under 10 U.S.C. § 533 and 10 U.S.C. § 12207, the Department of Defense promulgated DoD Directive 1312.3 regarding service credit for commissioned officers.

Under DoD Directive 1312.3, the general policy of the Department of Defense is that service credit "to any person being appointed, assigned, or designated as a commissioned officer in an officer category shall be equitably determined to establish an appropriate appointment grade and date of rank relative to other officers *in the same competitive category*."  AR 109 (emphasis added).

As the defendant explains, this means that a person joining the JAGC program who has prior experience practicing law, or working in the "same competitive category," may receive more service credit than a person, like the plaintiff, who had experience in the military performing work outside of the competitive category in which he is now working. Def.'s Mem. at 11.  This policy, the defendant explains, "helps avoid situations where a military member joining a highly specialized program such as JAGC or a military medical program straight out of law or medical school does not end up as a higher ranking officer than individuals who have several years of legal or medical training simply because he or she previously served in the military in a completely un-related capacity."  *Id*.  The defendant had the authority to promulgate such a regulation under 10 U.S.C. §§ 533 and 12207.

## 2.     Chief of Naval Operations Instructions 1120.11

Consistent both with 10 U.S.C. § 533 (and 10 U.S.C. § 12207) and with DoD Directive 1312.3, Naval Operations Instruction 1120.11 provides Navy-specific standards for the appointment of regular and reserve officers in the JAGC.  Naval Operations Instruction 1120.11 states that it establishes regulations governing the "[a]ward of entry grade credit on appointment in the JAG Corps under sections 533 and 12207."  AR 116.  This Instruction further explains that in order to "obtain experienced former active-duty commissioned officers who can compete for career status while maintaining uniform and stable management of the JAG Corps community,

total [Entry Grade Credit] granted, other than for officers accessed through the LEP, shall be

limited to 48 months." AR 124.  The plaintiff has not shown that there is anything arbitrary and

capricious about the defendant capping the plaintiff's prior service credit at four years pursuant

to this express regulation.

>    **C.      The Plaintiff's Remaining Arguments that the BCNR's Decision Was
>              Arbitrary and Capricious Are Also Unavailing.**

The Court now turns to the plaintiff's remaining arguments that the BCNR's decision

was arbitrary and capricious.  First, the Court addresses the plaintiff's argument that 10 U.S.C. §

533(f), in conjunction with 10 U.S.C. § 12207, "[y]ields [f]ull [p]rior [s]ervice credit for

[p]laintiff." Pls.' Mem. at 13.  Second, the Court turns to the plaintiff's argument that he is

entitled to equitable relief because the "[r]esult [i]mposed [u]pon [p]laintiff by the Navy [w]ith

[c]onfirmation by the BCNR has [w]orked an [i]nequity upon" him.  Pls.' Mem. at 15.

>    **1.      The Plaintiff's Claim For Relief Under 10 U.S.C. 533(f) Is Unavailing.**

Perhaps realizing the futility of his arguments regarding 10 U.S.C § 533(a), DoD

Directive 1312.3 and Chief of Naval Operations Instruction 1120.11, the plaintiff asserts that he

is entitled to relief because he was appointed as a Lieutenant in the JAGC under 10 U.S.C. §

533(f), which governs awards of prior service credit to officers transitioning from reserve to

regular status.  *See* Pl.'s Mem. at 13-14.  According to the plaintiff, DoD Directive 1312.3 does

not apply "to the appointment of Reserve commissioned officers as Regular commissioned

officers under Section 533(f)," *id*. (quoting AR 109), and, consequently, this means "simply that

full credit for prior active duty service is required if the appointment falls under [10 U.S.C.

section] 533(f)." Pl.'s Mem. at 13.

The plaintiff provides no legal support for the argument that he was appointed under 10

U.S.C. § 533(f), however.  Furthermore, he has not shown that it was arbitrary and capricious for

the BCNR to conclude expressly that the plaintiff's appointment was not under 10 U.S.C. §

533(f).  As the BCNR explained, "section 533(f) applies to officers who are merely transitioning

from Reserve to Regular status, but the EGC [entry grade credit] provisions of section 533 apply

to officers, like yourself, who are entering a new professional field."  Def.'s Mem. at 15 (quoting

AR Appx. at 3).  The defendant argues that this agency conclusion is entitled to "substantial

deference," *id.*, and the Court agrees that deference is appropriate here.  Applying that substantial

deference, the Court concludes that the agency provided a sufficiently rational explanation for

why the plaintiff's appointment did not fall under 10 U.S.C. § 533(f).  *See e.g*., *Beauregard v.*

*Mabus*, No. 10-cv-1972, 2012 U.S. Dist. LEXIS 147700 (D.D.C. Oct. 15, 2012) (unpublished)

(noting that the BCNR is "free to draw [its] own reasonable inferences and conclusions from the

evidence before [it]" and that "an agency's decision need not be a model of analytic precision to

survive, but rather the agency needs only to have used its discretion in a reasoned manner.")

(citations omitted).

　　　　Moreover, even if section 533(f) *did* apply to the plaintiff's appointment as a Lieutenant,

it is far from clear that the plaintiff would be entitled to a promotion in rank under that provision.

Def.'s Mem. at 16.  Under 10 U.S.C. § 533(f):

> A reserve officer (other than a warrant officer) who receives an original
> appointment as an officer . . . shall
> (1) in the case of an officer on the active-duty list immediately before that
> appointment as a regular officer, be appointed in the same grade and with the
> same date of rank as the grade and date of rank held by the officer on the active-
> duty list immediately before the appointment; and
> (2)  in the case of an officer not on the active-duty list immediately before that
> appointment as a regular officer, be appointed in the same grade and with the
> same date of rank as the grade and date of rank which the officer would have held
> had the officer been serving on the active-duty list on the date of the appointment
> as a regular officer.

Immediately before his regular appointment to the JAGC as a Lieutenant, the plaintiff was not on the active duty list, but was a reservist at the rank of Ensign in the JAGC.  *See* Compl. ¶¶ 13-15 (noting that, on August 21, 2006, "Plaintiff was recommissioned as an Ensign" after serving as a drilling reservist, and that it wasn't until Sept. 12, 2006 that he "received active duty orders"); AR Appx. 8 (NPC advisory opinion stating that, immediately before his appointment as a Lieutenant in the JAGC, the plaintiff was *not* on the "active duty list" but was on the "reserve active status list"); *see also* Pl.'s Mem. at 14 (admitting that the plaintiff "went from Reservist to Regular status in the JAGC" when he was appointed as a Lieutenant in September 2006).  Since the plaintiff was a reserve Ensign prior to his appointment as a regular Lieutenant in September 2006, which he claims "was done pursuant to section 533(f)," Pl.'s Mem. at 14, pursuant to the plain language of 10 U.S.C. § 533(f), the plaintiff should have received a regular appointment at the rank of Ensign, rather than Lieutenant, to the JAGC.  *See* 10 U.S.C. § 533(f) (a reserve officer receiving a regular appointment "shall . . . be appointed in the same grade and with the same date of rank as the grade and date of rank held by the officer . . . immediately before the appointment"); *see also* NPC Advisory Opinion, AR Appx. at 8 (noting that "[u]nder 10 U.S.C. § 533(f), [the plaintiff] may have been appointed as a Regular officer in the grade of ensign; instead, the Navy appointed Applicant in the higher grade of lieutenant.").  Thus, an appointment under 10 U.S.C. § 533(f) would not have helped the plaintiff to advance in the JAGC.

Furthermore, the Court sees no reason why the four year service credit cap from Naval Operations Instruction 1120.11, which expressly governs the appointment of regular or reserve officers in the JAGC program, would not still apply to individuals appointed under 10 U.S.C. §

533(f).  Accordingly, the plaintiff's argument that his appointment fell under 10 U.S.C. § 533(f) would not save his claims.

### 2.   The Plaintiff is Not Entitled to Equitable Relief.

Finally, the Court turns to the plaintiff's argument that the Court should set aside the BCNR's decision because it "has [w]orked an [i]nequity" upon him.  Pl.'s Mem. at 15.  The plaintiff argues that "Sections 533(a)(1) and 12207(a)(1) of Title 10 reflect the fundamental notion that men and women who serve in the Armed Forces of this country deserve what they have earned," and that it is "inconceivable" that Congress would have intended the "draconian consequence" of the plaintiff being "stripped" of 41 months of active duty service.  Pl.'s Mem. at 15.  The Court is not convinced that there is any such injustice here.

Congress gave the Secretary of Defense authority to issue regulations limiting the rank of new lawyers with prior service for the rational reason of ensuring that more experienced lawyers are not supervised by inexperienced ones who may have a higher rank due solely to their prior service outside the specialized service.  Capping the credit for prior service for officers newly appointed in the JAGC thus helps maintain discipline, order, and respect within the ranks.  As the defendant argues, "th[is] system . . . prevents unfairness to Plaintiff by assuring that officers like himself, with little legal experience, are not forced to compete for promotions with JAGs of the same rank that have significantly more legal experience."  Def.'s Reply at 5-6.  Moreover, this limit on prior service credit helps to promote higher quality legal work on behalf of the JAGC by ensuring that the more experienced lawyers are also the ones with a higher rank, with the authority by virtue of their rank to issue orders to less experienced lawyers.

An example helps illustrate how the plaintiff's request for relief in this case may lead to untenable results: under the plaintiff's reasoning, a person who decided to go to law school later

in life, and entered the JAGC after ten years of prior commissioned service would be entitled to the full ten years of prior commissioned service, and would be competing for promotion with lawyers who have ten years of lawyering experience.  That is like a newly-minted lawyer entering a law firm and, instead of taking up his or her place as a first-year associate being forced immediately to compete with lawyers eligible to make partner in the firm.  The new lawyer would not be taken seriously in this competition; furthermore, the lawyer would almost certainly not have the lawyering experience to do what is required of a partner.  This same reasoning must apply in the JAGC.  Congress could not possibly have intended for a new lawyer to enter the JAGC and immediately be competing with colleagues with many more years of legal experience. That would not only provide a disservice to the new lawyer, but also endanger the respect for rank and discipline that is fundamental to military service.  The Navy reasonably capped the plaintiff at four years of prior commissioned service, consistent with its regulations and statutory authority.  There was nothing arbitrary and capricious about the BCNR's denial of the plaintiff's request for relief.

## IV.    CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment is GRANTED, and the plaintiff's cross-motion for summary judgment is DENIED.  An Order consistent with this opinion shall be issued.


DATED:  November 29, 2012

_/s/ Beryl A. Howell_
BERYL A. HOWELL
United States District Judge